James F. Murphy, Esq.
**LEWIS JOHS AVALLONE AVILES, LLP**
One CA Plaza, Suite 225
Islandia, New York 11749
Telephone: (631) 755-0101
Facsimile: (631) 755-0117
E-mail: jfmurphy@lewisjohs.com

- and -

Michael R. Reese, Esq.
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
E-mail: mreese@reesellp.com

*Counsel for Plaintiff and the Class*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF THE STATE OF NEW YORK

| | |
|---|---|
| DAWN ROTHFELD, individually and on behalf of and all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>KIMBERLEY-CLARK CORPORATION,<br><br>Defendant. | Case No.: 20-CV-05647<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Dawn Rothfeld ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class," as defined below), brings this Class Action Complaint against Kimberly-Clark Corporation ( "Defendant") and alleges the following based upon Plaintiff's own personal knowledge and the investigation of Plaintiff's counsel. Plaintiff believes substantial evidentiary support exists for the allegations set forth herein and seeks a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the *United States Code*), under 28 U.S.C. § 1332(d) because the aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interest and costs, and both Plaintiff and other members of the putative Class are citizens of a state (New York) different from Defendant (Texas). Furthermore, Plaintiff alleges "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

2.      This Court has personal jurisdiction over the Defendant for reasons including, but not limited to the following: Plaintiff's claims arise out of Defendant's conduct within this jurisdiction, including Defendant's sale of the products at issue in this District.

3.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including Plaintiff's purchase of Defendants' products in this District.

## SUBSTANTIVE ALLEGATIONS

4.      This is a class action lawsuit seeking recovery for the harms caused by millions of contaminated, dangerous, and worthless flushable wipes manufactured by Kimberly-Clark and sold throughout the state of New York.

5.      Kimberly-Clark neglected the safety and sanitation responsibilities it owed to its customers and the public at large.

6.      On or about February of 2020, a dangerous bacterial strain called *Pluralibacter gergoviae* contaminated certain lots of Kimberly-Clark's Cottonelle Flushable Wipes and

Cottonelle GentlePlus Flushable Wipes products (the "Cottonelle Wipes"; "Wipes" or "Products").

7.      Lacking appropriate safeguards to detect and/or remediate bacterial contamination in its products (or otherwise failing to execute them with reasonable care or competence), Kimberly-Clark proceeded to sell the contaminated Cottonelle Wipes to Plaintiff and other consumers throughout New York through third-party retailers.

8.      Indeed, Kimberly-Clark continued its mass, New York statewide distribution of contaminated Wipes for another *seven months*—all the while failing to detect the bacterial contamination, warn the public, or otherwise take any steps whatsoever to remediate the serious health risks to which it had exposed Plaintiff, similarly situated consumers, and the public at large. This despite ample warnings that something was wrong with the Cottonelle Wipes.

9.      Throughout this time frame many of the Wipes had dark-brown spots on the surface and mildew-like odors emanating from their packaging, both of which are recognized as indicators of bacterial contamination by manufacturers of cosmetics and personal care products.  For a leading multinational manufacturer of hygiene and sanitary products, they unquestionably presented cause for prompt and careful investigation.

10.      But Kimberly-Clark's investigation was neither prompt nor careful. Only *after* a rash of customer complaints regarding skin irritation, infection, and other complications became overwhelming (and thus a reckoning, inevitable) did Kimberly- Clark conduct the investigation and product testing required to discover the bacterial contamination.

11.      And so, on or about October 9, 2020, Kimberly-Clark announced a nationwide recall (the "Recall") for affected lots of the Cottonelle Wipes.

12.    The Recall has affected thousands of consumers who purchased the Wipes at retail locations, causing damages that include loss of value, personal injury, and violation of consumer protection and deceptive practices statutes, as detailed herein.

13.    Further, Kimberly-Clark has left thousands of consumers holding packages of Cottonelle® Flushable Wipes that are unsuitable for their intended use and, thus, entirely worthless.

14.    By this action, Plaintiff seeks to recover, on behalf of herself and the putative New York class of similarly situated consumers, the total losses they have sustained on their purchase of Kimberly-Clark's Cottonelle Wipes, as well as statutory damages under New York General Business Law §§ 349 and 350.

## PARTIES

15.    Plaintiff, Dawn Rothfeld, is a resident of Oceanside, New York. Plaintiff bought the Product on or about February 2020 through and including October 2020 at Costco in Oceanside, New York. Following the purchase of the Cottonelle Wipes, the plaintiff utilized the same after urinating and after bowel movements on a daily basis through October 2020. Upon utilizing the Cottonelle Wipes, she began to suffer serious injury, including, but not limited to, urinary tract infections; bladder pressure; incomplete bladder emptying; voiding urgency; painful urination; and increased frequency of urination. As a result of her use of Cottonelle Wipes, she was placed on antibiotic therapy and underwent radiological studies, including, but not limited to ultrasounds of the abdomen and ultrasounds of the bladder. Further, as a result of her use of Cottonelle Wipes, she suffered and continues to suffer from pain; weakness; fatigue; stomach discomfort; nausea; vomiting; difficulty walking; stress; anxiety; apprehension; mental distress; fear; tension; and severe emotional trauma.

16.     Defendant Kimberly-Clark Corporation is a corporation formed and existing under the laws of Delaware, with its principal place of business located in Irving, Texas.

## FACTUAL ALLEGATIONS

### A.  The Cottonelle Wipes and Kimberly-Clark's Misrepresentations About Them

17.     From its statements of broad corporate principles to its packaging designs for particular products, Kimberly-Clark drives home a consistent message about what consumers can expect of its Cottonelle-branded products: they're quality, clean, gentle, refreshing, hygienic, and—most importantly—safe.

18.     Kimberly-Clark describes "Cottonelle® Flushable Wipes [as] fresh, gentle and effective for a truly refreshing clean.  They are designed with  CleaningRipples™ Texture and the cleansing power of water to deliver long-lasting freshness."

19.     In similar    fashion, Kimberly-Clark    describes "Cottonelle® GentlePlus™ Flushable Wipes [as] made with 95% pure water and enriched with Aloe & Vitamin E to deliver a gentle clean for sensitive skin. They are designed with CleaningRipples™ Texture and the cleansing power of water for a truly refreshing clean. Additionally, they're hypoallergenic, chlorine-free and paraben-free."

20.     Kimberly-Clark's product homepage for the Cottonelle Wipes also lists their ingredients, along with the benefits each ingredient brings. Kimberly-Clark represents that the ingredients in the Cottonelle Flushable Wipes, among other things, "helps clean skin," "helps keep skin soft and smooth," and "helps provide a pleasant scent."

21.     Over the past two years, Kimberly-Clark has promoted its Cottonelle Flushable Wipes under its innuendously-themed "down*there*care" marketing campaign.

22.    Consistent with Kimberly-Clark's messaging for the Cottonelle brand generally, the "down*there*care" campaign emphasizes the Cottonelle Wipes' supposed clean, refreshing, and confidence-bringing properties and encourages their use on the most intimate parts of the human body.

23.    As explained by Kimberly-Clark's Chief Brand Manager for Cottonelle, "[t]he down*there*care program urges people to rethink [flushable wipes as part of personal care]—by opening an honest dialogue and highlighting the importance of a superior clean that leaves you feeling clean, fresh and confident."

24.    The Cottonelle Wipes' packaging bears similar representations, emphasizing the products "Cleansing Water & Cleansing Ripples," as well as the "Refreshingly Clean" feeling they deliver:



25.    The Cottonelle Wipes received by Plaintiff and the, Class members, however, differed markedly from Kimberly-Clark's representations, as detailed below.

**B.  Kimberly Clark's Mass Distribution of Wipes Contaminated with *Pluralibacter gergoviae* to Consumers in New York State**

26.     On or about February of 2020, Kimberly-Clark began distributing retail packages of its Cottonelle Wipes that that it knew or should have known were contaminated with a dangerous bacterium called *Pluralibacter gergoviae*.

27.     Formerly known as *"Enterobacter gergovia," P. gergoviae* is a pathogen linked to "several infections including, but not limited to, lower respiratory tract infections, skin and soft tissue infections and urinary tract infections."

28.     According to the FDA, *Pluralibacter gergoviae* poses a particular risk of infection to "[i]ndividuals with weakened immune systems, who suffer from a serious pre-existing condition, who have been treated surgically or belong to another sensitive group of persons."

29.     Symptoms of *P. gergoviae* infection are indistinguishable in clinical presentation from those of more common bacterial infections. Yet *P. gergoviae* is stubbornly resistant to antibiotics typically used for those common bacterial infections, making their diagnosis and treatment difficult.

30.     An alarming number of consumers who used the Cottonelle Wipes in the eight months preceding the recall reported adverse symptoms consistent with exposure to *P. gergoviae*, including everything from general discomfort to severe infections.

31.     A brief sampling of social media reports of consumers during this time frame describe medical complications ranging in severity from mildly-unpleasant to potentially-lethal:

  a)     *"I thought it was a stomach bug or something . . ";*

  b)     "*daily diarrhea for well over a month . . .*";

  c)     "*I became violently ill with intense nausea and vomiting . . .*";

  d)     "*an insanely overwhelmingly frustrating itch that will absolutely not go away unless I sit on the business end of a belt sander . . .*";

  e)     "*I began to experience tremendous anal itching . . .*";

f)    "*I started having frequent diarrhea . . .*";

g)    "*It's ruined my life . . .*";

h)    "*a summer of misery, nonstop vomiting and diarrhea . . .*";

i)    "*the last two months have been hell*" *went from 150lbs to 115 in a month, went to ER, stayed in hospital for a week to save my life, had to have gut surgery . . .*"

32.    Unfortunately, similar accounts abound. Thousands of women have reported urinary-tract infections after using the Wipes, which required doctor and hospital visits, and Cottonelle's social media accounts have been flooded with accounts of injuries relating to the products—many of which have gone undiagnosed due to the rare strain of bacteria at issue.

33.    Besides the accounts of rashes, infections, and other serious health complications, many other consumer complaints supplied information that should have adequately notified Kimberly-Clark that something was amiss with the Cottonelle Wipes.

**C.  The Recall**

34.    Finally, On October 9, 2020, after the flurry of customer complaints continued to intensify, Kimberly-Clark commenced a voluntary nationwide recall on certain lots of Cottonelle Wipes.

35.    But Kimberly-Clark's efforts have proved lacking in this regard too—its handling of the Recall and communications with affected customers has been inadequate, ineffective, and seemingly insincere.

36.    Kimberly-Clark initially notified consumers of a recall of specified lots of Cottonelle Wipes via a notice posted on its Cottonelle website (the "Recall Notice"), which advised, in part, that:

> Kimberly-Clark announced a product recall of its Cottonelle®
> Flushable Wipes and Cottonelle® GentlePlus Flushable Wipes sold
> throughout the United States, Canada and the Caribbean, due to the
> detection of some Cottonelle® Flushable Wipes that do not meet our
> high quality standards. The recall is limited to specific lots of
> Cottonelle® Flushable Wipes and Cottonelle® GentlePlus
> Flushable Wipes manufactured between February 7, 2020 –
> September 14, 2020. Please check your lot number above. No other
> Cottonelle® products are affected by this recall and Flushable Wipes
> not affected are safe to use.

37.    In the ensuing days, retailers such as Costco and Amazon, began issuing notices to retail purchasers of the Cottonelle Wipes that their "product might contain bacterium, Pluralibacter gergoviae, which was detected during product testing." The retailer notices generally directed consumers back to the Cottonelle Recall Notice for additional information.

38.    The Recall Notice contains a section directed at answering "Frequently Asked Questions" about the Recall. At best, the answers Cottonelle has provided to the FAQ's are vague, confusing, and incomplete; at worst, they deliberately minimize the health risks posed by the contaminated Wipes.

39.    In fact, Kimberly-Clark has surreptitiously made revisions to the original language of the FAQ's, revisions that are transparently calculated to minimize consumers' impression of the risks associated with the *P. gergoviae* contamination.

40.    For example, the language of the original Recall Notice "describe[ing] what the problem is with the Cottonelle® Flushable Wipes" originally read as follows:

> Some of the affected product could contain the bacterium,
> Pluralibacter gergoviae, which is a cause of infection in humans, can
> be an opportunistic pathogen, and is part of the normal intestinal
> flora. Individuals who have a weakened immune system, suffer from
> a serious pre-existing condition, have been treated surgically, or
> belong to another sensitive group of persons are at a particular risk
> of infection. At this time, there is a low rate of non-serious
> complaints, such as irritations and minor infections, reported for the
> affected wipes.

41.    But Kimberly-Clark subsequently modified this paragraph, without notice to affected consumers, to claim that the contaminant "naturally occurs," "rarely causes serious infections in healthy individuals," and reduces the categories of high-risk persons from the four groups described above to persons with a "weakened immune systems" only:

> The affected product could show the presence of a bacterium (Pluralibacter gergoviae) which naturally occurs in the environment and in the human body. Pluralibacter gergoviae rarely causes serious infections in healthy individuals. However, individuals with weakened immune systems are at a heightened risk of infection. Consumers can identify the recalled product by looking for specific lot numbers found on the bottom of the package and verifying it with the lot checker on the Cottonelle® website. At this time there is a low rate of non-serious complaints, such as irritation and minor infection, reported for the affected wipes.

42.    Further, the Cottonelle and retailer notices generally instructed consumers to direct any "concerns" to Kimberly-Clark through the Cottonelle.com webpage or by call[ing] using the "Contact Us" button on our website, or call our Consumer Services line at 1-800-414-0165, Monday - Friday 8:00 a.m. – 9:00 p.m. CT.

43.    However, affected consumers have widely reported receiving error notices when attempting to submit information requests through Cottonelle web portal, being unable to reach any customer services representatives via the phone line, including having their calls disconnected. Thus, Kimberly-Clark's claim that "[a]t this time there is a low rate of non-serious complaints" is entirely misleading given that the statement was made simultaneously with the Recall before consumers could know their health issues were linked to the Wipes and given that the company is wholly unequipped to competently intake consumers' complaints.

44.    As a result, Plaintiff and similarly situated consumers find themselves stuck with contaminated and worthless Wipes and without any guidance about how to protect themselves from the risks of harm the Wipes might pose to them and their families.

## CLASS ALLEGATIONS

45.     Plaintiff brings this action on behalf of the following New York Class ("Class" or

"New York Class") pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil

Procedure:

> **The New York Class** - **.** All persons who purchased any of
> Defendants' Cottonelle® Flushable Wipes and/or Cottonelle®
> GentlePlus Flushable Wipes between February 7, 2020 and
> September 14, 2020.
>
> Excluded from the Class are: (a) Defendant, Defendant's board
> members, executive-level officers, and attorneys, and immediately
> family members of any of the foregoing persons; (b) governmental
> entities; (c) the Court, the Court's immediate family, and the Court
> staff; and (d) any person that timely and properly excludes himself
> or herself from the Class in accordance with Court-approved
> procedures

46.     Plaintiff reserves the right to alter the Class definitions as Plaintiff deems necessary

at any time to the full extent that the Federal Rules of Civil Procedure, the Local Rules of this

District, and applicable precedent allow.

47.     Certification of Plaintiff's claims for class-wide treatment is appropriate because

Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence

as individual Class members would use to prove those elements in individual actions alleging the

same claims.

**Numerosity—Rule 23(a)(1)**

48.     Based on the popularity of the Products, it is readily apparent that the number of

consumers in the Class is so numerous that the individual joinder of all of its members is

impracticable, if not impossible. Due to the nature of the trade and commerce involved, Plaintiff

believes the total number of Class members is in the thousands and that members of the Class are

geographically dispersed across the state of New York. While the exact number and identities of

the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.

**Commonality and Predominance—Rule 23(a)(2) and (b)(3)**

49.     Common questions of law and fact exist as to all members of the Class, and these common questions predominate over any questions affecting only individual members of the Class.

50.     The common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to, the following:

    a)   whether Defendant labeled, marketed, advertised, and/or sold the Products to Plaintiff and those similarly situated using false, misleading, and/or deceptive statements or representations;

    b)   whether Defendant misrepresented material facts in connection with the sales of the Products;

    c)   whether Defendant participated in and pursued the common course of conduct complained of herein; and

    d)   whether Defendant's labeling, marketing, advertising, and/or selling of the Products constitute an unfair or deceptive consumer sales practice.

**Typicality—Rule 23(a)(3)**

51.     Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased the Product in a typical consumer setting and sustained damages from Defendant's wrongful conduct. The claims of the members of the class arise from the same

course of conduct by Defendant, and the relief sought is common to Plaintiff and the Class members.

52.    Furthermore, there are no defenses available to Defendant that are unique to Plaintiff.

**Adequacy of Representation—Rule 23(a)(4)**

53.    Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has no interests that conflict with those of the Class.

54.    Plaintiff has retained counsel competent and experienced in litigating complex class actions. Undersigned counsel have represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive business practices.

**Superiority—Rule 23(b)(3)**

55.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all members of the Class is impracticable. Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice. Furthermore, given the large

number of consumers of the Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

**Declaratory and Injunctive Relief—Rule 23(b)(2)**

56.    This action is maintainable as a class action under Rule 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief respecting the Class as a whole.

**Notice**

57.    Plaintiff and Plaintiff's counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

## CLAIMS

### FIRST CLAIM

### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Class Members)**

58.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

59.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

60.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and New York Class Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting the Products.

61.     Defendant misleadingly, inaccurately, and deceptively presented the Products to consumers.

62.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Product —is misleading in a material way in that it, *inter alia*, induced Plaintiff and New York Class Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have.

63.     Defendants made the untrue or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

64.     Plaintiff and New York Class Members have been injured inasmuch as they paid a premium for Products that presented a health risk or were otherwise unsafe for use.   Accordingly, Plaintiff and New York Class Members received less than what they bargained or paid for.

65.     Defendant's advertising and products' packaging and labeling induced the Plaintiff and New York Class Members to buy Defendants' Products and to pay a premium price for them.

66.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the Class have been damaged thereby.

67.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Class Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

68.     Plaintiff and Class Members seek actual damages under GBL § 349, as well as statutory damages of $50 per unit purchased pursuant to GBL § 349.

## SECOND CLAIM

## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and New York Class Members)

69.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

70.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

71.    N.Y. Gen. Bus. Law § 350-a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

72.    Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products.

73.    Plaintiff and New York Class Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Products.    Accordingly, Plaintiff and New York Class Members received less than what they bargained or paid for.

74.    Defendant's advertising, packaging and product labeling induced the Plaintiff and Class Members to buy Defendant's Products.

75.    Defendant made the untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

76.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

77.     Defendant made the material misrepresentations described in this Complaint in Defendants' advertising, and on the Products' packaging and labeling.

78.     Defendant's material misrepresentation was substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

79.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and Class Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

80.     Plaintiff and New York Class members also are entitled to statutory damages of $500 per unit purchased.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of the members of the Class, respectfully requests the Court to enter an Order:

A.  certifying the proposed Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B.  declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.  declaring that Defendant has committed the violations of law alleged herein;

D.  providing for any and all injunctive relief the Court deems appropriate;

E.  awarding monetary damages, including but not limited to any statutory, compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

F.  providing for any and all equitable monetary relief the Court deems appropriate;

G.  awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

H.  awarding Plaintiff her reasonable costs and expenses of suit, including attorneys' fees;

I.  awarding pre- and post-judgment interest to the extent the law allows; and

J.  providing such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury of all claims and causes of action so triable in this lawsuit.

Dated: Islandia, New York
November 19, 2020

LEWIS JOHS AVALLONE AVILES, LLP

By: _____
      James F. Murphy, Esq.
One CA Plaza, Suite 225
Islandia, New York 11749
T: (631) 755-0101
F: (631) 755-0117
E-mail: jfmurphy@lewisjohs.com

- and -

Michael R. Reese, Esq.
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
E-mail: mreese@reesellp.com

*Counsel for Plaintiff and the Class*